UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Emma Shelton, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　- against -<br><br>Kraft Heinz Foods Company,<br>　　　　　　　　　Defendant | 3:21-cv-00799<br><br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.　　Kraft Heinz Foods Company ("defendant") manufactures, labels, markets and sells Extra Sharp Yellow and Extra Sharp White (Cheese) Bites with Butter Crackers under the Cracker Barrel brand ("Product").




1

2.     The Product's name, which includes "Butter Crackers," is deceptive and misleading because it gives the false impression it contains a non-de minimis amount of butter, made from milk, cream or both.

3.     Instead, the crackers have butter substitutes – vegetable oils – and no butter.

## I.     BUTTER CRACKER

4.     When consumers see a food represented as "Butter Crackers," they will understand it is a type of cracker, and that "butter" is its defining feature.

5.     The meaning of compound words is greater than the sum of its parts, such that "butter cracker" does not mean "a cracker made with some butter" but a cracker which is made only or predominantly with butter – where butter is capable of being used.[1]

6.     Consumers prefer butter to its synthetic substitutes, typically made from "vegetable" oils, i.e., margarine.

7.     Long established FDA guidance reflects consumer appreciation for butter.

8.     The FDA recommends that where a food is labeled "Butter _____" or uses the word "butter" in conjunction with its name, reasonable consumers will expect that whenever butter could be used in a product, it would be, instead of butter substitutes.[2]

9.     Consumers prefer butter to chemically produced "vegetable" oils for numerous reasons.

10.    First, butter does not contain the trans fats of vegetable oils.

---

[1] Of course, a cracker must contain flour, so the expectation of only or predominantly butter is with respect to the role of butter or fat ingredients in a cracker.
[2] Compliance Policy Guide ("CPG"), Sec 505.200, "Butter" Featured in Product Name, Center for Food Safety and Applied Nutrition, Office of Regulatory Affairs, March 1988 ("If the product contains both butter and shortening but a sufficient amount of butter to give a characteristic butter flavor to the product, an appropriate name would be 'butter flavored _____'… if the product contains any artificial butter flavor it would have to be labeled in compliance with 21 CFR 101.22(i)(2).").

11. Second, butter is natural, made by churning cow's milk.

12. Butter substitutes, like vegetable oils, are synthetic.

13. Highly refined vegetable oils are subjected to hydrogenation and interesterification, in the presence of chemical catalysts such as nickel and cadmium.

14. Third, butter is rich in nutrients like calcium and Vitamins A and D.

15. Fourth, butter has a creamy, sweet taste.

16. While vegetable oils are typically "refined, bleached and deodorized," to supposedly provide a neutral taste, the reality is different.

17. Vegetable oils are highly susceptible to oxidation.

18. The result is "reversion" of the flavor back to that of the original crude oil before it was processed.

19. This flavor is described as "beany,""powdery" or "fishy."

20. Vegetable oils detract from any authentic butter taste.

21. Though vegetable oils are described as "refined, bleached and deodorized," and purportedly do not affect a food's taste, the reality is different.

22. To describe a food's taste as "buttery" is a compliment, which refers to a light and fluffy texture, while vegetable oils contribute to a waxy mouthfeel which leaves an aftertaste.

23. Fifth, butter creates a flaky texture that is softer and less dense than one using vegetable oils, because butter is solid at room temperature.

24. Butter is more expensive than vegetable oils.

## II. "BUTTER CRACKERS" MISLEADING BECAUSE NO BUTTER

25. The name "Butter Crackers" is misleading because the Product does not contain any butter and uses vegetable oils – canola and palm oil – in its place.

> INGREDIENTS:
> EXTRA SHARP CHEDDAR (CHEDDAR CHEESE [PASTEURIZED MILK, CHEESE CULTURE, SALT, ENZYMES, ANNATTO (COLOR)], MODIFIED CORNSTARCH ADDED TO PREVENT CAKING, NATAMYCIN [A NATURAL MOLD INHIBITOR]), EXTRA SHARP WHITE CHEDDAR (CHEDDAR CHEESE [PASTEURIZED MILK, CHEESE CULTURE, SALT, ENZYMES], MODIFIED CORNSTARCH ADDED TO PREVENT CAKING, NATAMYCIN [A NATURAL MOLD INHIBITOR]), BUTTER CRACKERS (UNBLEACHED ENRICHED FLOUR [WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE (VITAMIN B1), RIBOFLAVIN (VITAMIN B2), FOLIC ACID], CANOLA OIL, SUGAR, PALM OIL, LEAVENING [CALCIUM PHOSPHATE AND/OR BAKING SODA], SALT, SOY LECITHIN).

**INGREDIENTS:**

**EXTRA SHARP CHEDDAR** (CHEDDAR CHEESE [PASTEURIZED MILK, CHEESE CULTURE, SALT, ENZYMES, ANNATTO (COLOR)], MODIFIED CORNSTARCH ADDED TO PREVENT CAKING, NATAMYCIN [A NATURAL MOLD INHIBITOR]), **EXTRA SHARP WHITE CHEDDAR** (CHEDDAR CHEESE [PASTEURIZED MILK, CHEESE CULTURE, SALT, ENZYMES], MODIFIED CORNSTARCH ADDED TO PREVENT CAKING, NATAMYCIN [A NATURAL MOLD INHIBITOR]), ==BUTTER CRACKERS== (UNBLEACHED ENRICHED FLOUR [WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE (VITAMIN B1), RIBOFLAVIN (VITAMIN B2), FOLIC ACID], ==CANOLA OIL==, SUGAR, ==PALM OIL==, LEAVENING [CALCIUM PHOSPHATE AND/OR BAKING SODA], SALT, SOY LECITHIN).

26. Though crackers do not have high levels of fat, the fat content contributes to their taste and texture.

27. The absence of butter – understood as made only from milk, cream, or both – is misleading based on the representation of "Butter Crackers."

28. "Butter crackers" which are made only with butter and not vegetable oils exist in the marketplace and are technologically feasible.



**INGREDIENTS:** Enriched Unbleached Flour (wheat flour, malted barley flour, niacin, reduced iron, thiamine mononitrate, riboflavin, folic acid), Butter (cream [milk], salt), Cane Sugar, Non-GMO Baking Powder (monocalcium phosphate, sodium bicarbonate, corn starch), Sea Salt, Topping Salt.

29. These "Sweet Butter Crackers" contain butter and no butter substitutes.

30. Defendant did not have to name the Product "Butter Crackers," but chose to, since this is more enticing to consumers.

31. Consumers are accustomed to labels which truthfully disclose where a food labeled as "Butter _____ " gets its taste from real butter or artificial butter flavor.

32. For example, cookies and biscuits which tout "butter" conspicuously disclose that their butter taste is from artificial flavor.





33. Snacks that emphasize "butter" truthfully tell consumers that their butter taste is not from butter but from artificial butter flavors.





6

34. Cake mix described as "Butter Golden" tells consumers its butter taste is because it is "Artificially Flavored" to imitate butter instead of from butter.



35. Defendant's Product does not even purport to have a "butter flavor," as the ingredients fail to indicate a flavoring ingredient, i.e., "Natural Flavor."

36. The representation of "Butter Crackers" is especially misleading considering the lack of qualifications for this description.

### III. CONCLUSION

37. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of a product or service, or its production process, relative to itself and other comparable products or alternatives.

38. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

39. Defendant sold more of the Product and at higher prices than it would have in the

7

absence of this misconduct, resulting in additional profits at the expense of consumers.

40. Had Plaintiff and proposed class members known the truth of the Fair Trade Certified Dairy – that it failed to assure a minimum of basic worker protections, they would not have bought the Product or would have paid less for it.

41. The Product is sold for a price premium compared to other similar products, no less than $2.39 for a 1.58 ounces, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

42. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

43. Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

44. Plaintiff Emma Shelton is a citizen of Illinois.

45. Defendant Kraft Heinz Foods Company is a Pennsylvania limited liability company with a principal place of business in Pittsburgh, Alleghany County, Pennsylvania and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

46. Venue is in this district because plaintiff resides in this district and a substantial part of the events or omissions giving rise to the claims occurred here, plaintiff's purchase of the Product.

## Parties

47. Plaintiff Emma Shelton is a citizen of Thompsonville, Franklin County, Illinois.

48. Defendant Kraft Heinz Foods Company, is a Pennsylvania limited liability company

with a principal place of business in Pittsburgh, Pennsylvania, Alleghany County.

49. Defendant's corporate predecessor – the Kraft Corporation – was started in 1903 through the sale of cheese door-to-door in Chicago.

50. Within twenty years, Kraft had become the largest manufacturer of cheese in the world.

51. In 2015, Kraft merged with Heinz to create one of the largest food companies in the world.

52. While defendant sells various types of foods, it is most well-known for selling foods which contain dairy ingredients.

53. Defendant licenses the name of the popular Cracker Barrel restaurant chain, known for its authentic and traditional southern food, of which butter is a key component.

54. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from stores including Kroger, 1704 W Deyoung St, Marion, IL 62959, between April and May, 2021, among other times.

55. Plaintiff saw the front label that said, "With Butter Crackers" and "Butter Crackers," and believed this meant the crackers had at least *some* butter.

56. Plaintiff was not distrustful of the representation of "Butter Crackers" and did not scrutinize the ingredient list to disprove the front label claim.

57. Plaintiff bought the Product at or exceeding the above-referenced price.

58. Plaintiff relied on the representations identified here.

59. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

60. Plaintiff chose between Defendant's Product and other similar products which were

9

represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

61. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

62. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

63. The class will consist of Illinois residents who purchased the Product during the statutes of limitations for each cause of action alleged.

64. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

65. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

66. Plaintiff is an adequate representative because her interests do not conflict with other members.

67. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

68. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

69. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

70. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

71. Plaintiff incorporates by reference all preceding paragraphs.

72. Plaintiff and class members desired to purchase a product which contained at least some butter, instead of no butter.

73. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

74. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

75. Plaintiff relied on the representations.

76. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,<br>
Implied Warranty of Merchantability and<br>
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

77. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained at least some butter, instead of no butter.

78. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

79. This duty is based on Defendant's outsized role in the market for this type of Product.

80. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

81. Defendant received notice and should have been aware of these issues due to

complaints by regulators, competitors, and consumers, to its main offices.

82. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

83. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

84. Defendant had a duty to truthfully represent the Product, which it breached.

85. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

86. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known brand.

87. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

88. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

89. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained at least some butter, instead of no butter

90. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

91. Defendant obtained benefits and monies because the Product was not as represented

and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: July 11, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

13